**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| TERRY BROWN, *on behalf of himself and all others similarly situated,* : : : Plaintiff, : : v. : : CORELOGIC RENTAL PROPERTY SOLUTIONS, : LLC, : : Defendant. : : | Civil Action No. 3:20-cv-363 |

**CLASS ACTION COMPLAINT**

Plaintiff Terry Brown ("Plaintiff"), by counsel, *on behalf of himself and all similarly situated individuals*, allege as follows:

**INTRODUCTION**

1. When enacting the Fair Credit Reporting Act, Congress found that consumer reporting agencies "have assumed a vital role" in evaluating consumer credit and there was a need to ensure that they "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S. Code § 1681(a)(3)-(4). To accomplish Congress' goal, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), which is one of the cornerstone provisions of the statute.

2. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires it to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). This section imposes a high, and often disregarded, standard on credit reporting agencies. *See, e.g., Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking

down the requirements of § 1681e(b), and explaining that " 'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

3. This case arises because Defendant Corelogic Rental Property Solutions, LLC uses overly broad criteria in response to its customers' requests for tenant screening reports. In this instance, Corelogic provided Plaintiff's potential landlord with a grossly inaccurate report branding him a sex offender, including multiple felony charges for statutory rape. Corelogic matched this criminal information to Plaintiff even though the underlying record unequivocally shows that Plaintiff had a different date of birth than the offender (January 13, 1976 v. February 24, 1976). Despite the obvious and objective difference between Plaintiff and the offender's name, Corelogic appears to have attributed these criminal records to Plaintiff because his name was *similar* to that of the convicted felon and the Plaintiff and offender were born in the *same year*—a common occurrence.

4. Corelogic's inaccurate reporting could have been easily prevented if it required a first name, last name, and date of birth match—a common procedure adopted by consumer reporting agencies. *See* Nat'l Consumer Law Ctr., *Broken Records*, 15 (2012) (explaining that "mismatched reports" are "due in large part to unsophisticated matching criteria" and that "many private screening companies rely solely on first name, last name, and date of birth."). Rather than adopting these procedures to ensure maximum accuracy, however, internal documents produced in another case showed, as characterized by a sister court, that Corelogic designed its matching logic "to continue to maximizing its profits and remain relevant in its market." *Williams v.*

*Corelogic Rental Prop. Sols., LLC*, No. CV PX 16-58, 2016 WL 6277675, at *5 (D. Md. Oct. 26, 2016). The court further added that "[n]owhere in the documents" was there "any indication" that Corelogic's "internal review into the company's matching logic was to comply with state or federal law[.]" *Id*.

5. In addition to Corelogic's own internal studies, it knows that its procedures are inadequate and unreasonable because it has been sued on multiple occasions for this misconduct. As part of this litigation, Corelogic agreed to a class action settlement whereby it agreed "with respect to search queries designated by wholesale background screening customers for "employment," [Corelogic] shall not provide any public records that do not match the search query by either Social Security number, a address, or full date of birth." *Witt v. CoreLogic National Background Data, LLC, et al.*, Civil Action No. 3:15-cv-386 (E.D. Va.), Dkt. 306-1, Class Action Settlement and Release at § 9.1 (emphasis added).

6. Despite agreeing to use the full date of birth for employment reports, Corelogic fails to utilize these same procedures for its tenant screening products, such as the report furnished regarding Plaintiff. By systematically allowing criminal records to be misattributed to potential tenants who had different dates of birth than the criminal offenders, Corelogic failed to maintain reasonable procedures to assure maximum possible accuracy. Because the putative class members were subject to the same procedure and suffered the same overarching harm, this case is capable and appropriate for class resolution.

**JURISDICTION**

7. The Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in this judicial district.

## PARTIES

9. Plaintiff is a natural person and a "consumer" as defined and governed by the FCRA, 15 U.S.C. § 1681a(c).

10. Defendant Corelogic Rental Property Solutions, LLC ("Corelogic" or "Defendant") is a Delaware limited liability company that is registered to conduct business in the Commonwealth of Virginia.

11. Defendant sells tenant background checks on a wholesale basis. Defendant is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

## FACTUAL ALLEGATIONS

A. **Pervasive Errors in Criminal Background Checks.**

12. Although no comprehensive study focusing on the accuracy of criminal record reports industrywide, several recent studies demonstrate the prevalence of major inaccuracies in criminal background reports. For example, a 2013 study by the National Employment Law Project examined criminal background checks conducted by the FBI. Nat'l Employment Law Project, *Wanted: Accurate FBI Background Checks for Employment* (July 30, 2013), available at www.nelp.org/publication/wanted-accurate-fbi-background-checks-for-employ-ment/.

13. Although "considered the gold standard" of criminal background checks, the NELP study found that "50 percent of the FBI's records fail to include information on the final disposition of the case" including "missing information [] frequently beneficial to job seekers." *Id*.

14. Similar to the NELP's survey, the National Association of State Public Interest Research conducted a study regarding error rates in consumer reports. This study concluded that

"79% of the credit reports contained either serious errors or other mistakes of some kind." *Id.*; *see also* Federal Trade Commission, Report to Congress Concerning the Accuracy of Information in Credit Reports (Dec. 2012).

15. Beyond the risks raised by the sheer volume of the information and players involved in the industry, the manner in which many companies prepare criminal history reports increases the risk of inaccuracies. Companies often purchase criminal data in bulk and in static form, or access databases that are infrequently updated.

16. "Despite the importance of the accuracy of criminal background report, evidence indicates that professional background screening companies routinely make mistakes with grave consequences" for applicants. *See* Nat'l Consumer Law Ctr., *Broken Records*, available at http://www.nclc.org/images/pdf/pr-reprts/broken-records-report.pdf.

17. Online background check companies sell criminal history reports that contain inaccurate information.

18. One "common problem with criminal background reports is false positive matches or mismatched identifications," resulting in a mismatched report that contains "the criminal history of a person other than the subject of the report." *Id.* at 15.

19. A mismatch report is "due in large part to unsophisticated matching criteria." *Id.*

20. Unlike "state-maintained databases" that use a "biometric identification system, such as fingerprint data," to match a person to a record, private companies typically use "non-biometric information, such as name and date of birth." *Id.*

21. Because many courts will not release social security numbers, many private companies "rely solely on first name, last name, and date of birth," which "poses significant trouble for people with common names." *Id.*; *see also Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp.

3d 1342, 1360 (N.D. Ga. 2015) (denying a background company's motion for summary judgment, including its argument that "[r]eporting records that match complete names and dates of birth is a procedure reasonably designed to assure maximum possible accuracy, and is considered industry best-practice.").

22. The problem is significantly magnified where, as here, a company does not require a full match of the first name, last name, and date of birth (rather than year of birth).

23. A search of a website, howmanyofme.com, demonstrates the high risk of inaccuracy created when a consumer reporting agency fails to use a full match of the first name, last name, and date of birth.

24. According to this predictive website—which uses U.S. Census Bureau data to make estimates about the number of people with the same name—there are *at least* 3,317 people named Terry Brown in the United States.

25. Given the number of people with common names, it is unreasonable to match a record to a person based, upon information and belief, the person's name and year of birth.

**B.   Facts Regarding the Plaintiff's Experience.**

26. On or around January 24, 2020, Plaintiff applied to rent an apartment at the Seasons at Celebrate Virginia in Fredericksburg, Virginia.

27. As part of the application process, Plaintiff was required to undergo a background report.

28. In order for his landlord to obtain his background report, Plaintiff provided his name, social security number, date of birth, and driver's license number.

29. Plaintiff's landlord ordered a background report from Corelogic. In requesting the background report, the landlord provided Corelogic with Plaintiff's first name, last name, full date of birth, address, and last four digits of his social security number.

30. Corelogic provided Plaintiff's background report to the Seasons at Celebrate Virginia on or around January 24, 2020.

31. Seasons at Celebrate immediately denied his rental application "because a background check indicated [he] had been convicted of a crime."

32. Plaintiff requested a copy of his report from Corelogic.

33. Upon receipt of his report, Plaintiff learned that Corelogic's report identified him as a sex offender and contained three felony convictions for statutory rape.

34. None of these felony convictions should have been associated with Plaintiff, who has no criminal history.

35. Corelogic knew or should have known that this information did not belong to Plaintiff because it did not match the date of birth, *i.e.*, January 13, 1976, provided to Seasons at Celebrate Virginia.

36. Instead, Corelogic appears to have matched this information to Plaintiff was born in the same year as the offender, who was born on February 24, 1976, according to his indictment.

37. Despite the objective difference between the Plaintiff and offender's dates of birth, Corelogic matched the information to Plaintiff's background report and reported it to his potential landlord—even though the underlying record contained the offender's date of birth.

38. Plaintiff immediately disputed this information with Corelogic, who agreed that the sex offender records should not be associated with Plaintiff.

C.  **Allegations Regarding Corelogic's Willfulness.**

39. Corelogic violated the FCRA by using overly broad criteria in response to its customers' requests for tenant screening reports.

40. Corelogic matched this criminal information to Plaintiff even though the underlying records unequivocally indicated that the offender was born on February 24, 1976; not January 13, 1976, as listed on Plaintiff's application.

41. Corelogic's inaccurate reporting could have been easily prevented if it required a date of birth match prior to the publication of its reports—a common procedure adopted by consumer reporting agencies. *See* Nat'l Consumer Law Ctr., *Broken Records*, 15 (2012) (explaining that "mismatched reports" are "due in large part to unsophisticated matching criteria" and that "many private screening companies rely solely on first name, last name, and date of birth."); *E-Backgroundchecks.com*, 81 F. Supp. 3d at 1360 (discussing credit reporting agency's contention that use of first name, last name, and date of birth "is considered industry best-practice.").

42. Rather than adopting these procedures to ensure maximum accuracy, however, internal documents produced in another case showed that Corelogic designed its matching logic "to continue to maximizing its profits and remain relevant in its market." *Williams*, 2016 WL 6277675 at *5.

43. These documents, including an in-depth study of its matching algorithm, further showed that there was no indication that Corelogic's "internal review into the company's matching logic was to comply with state or federal law[.]" *Id*.

44. In addition to Corelogic's own internal studies, it knows that its procedures are inadequate and unreasonable because it has been sued on multiple occasions for this misconduct.

45. As part of litigation in this District and Division, Corelogic agreed to a class action settlement whereby it agreed "with respect to search queries designated by wholesale background screening customers for "**employment**," [Corelogic] shall not provide any public records that do not match the search query by either Social Security number, a address, or full date of birth." *Witt v. CoreLogic National Background Data, LLC, et al.*, Civil Action No. 3:15-cv-386 (E.D. Va.), Dkt. 306-1, Class Action Settlement and Release at § 9.1.

46. Despite agreeing to use the full date of birth for employment reports, Corelogic fails to utilize these same procedures for its tenant screening products, such as the report furnished regarding Plaintiff.

47. In addition to the conduct set forth above, Corelogic's willful conduct is further reflected by, inter alia, the following:

   a. The FCRA was enacted in 1970; Corelogic has had nearly many years to become compliant;

   b. Corelogic is a corporation with access to legal advice through its own general counsel's office and outside employment counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

   c. Corelogic knew or had reason to know that its conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA;

   d. Corelogic voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

   e. Corelogic's violations of the FCRA were repeated and systematic.

48. At all times relevant hereto, Corelogic's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. Corelogic's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that Corelogic and other consumer reporting agencies have been subject to court decisions critical of similar conduct; and Corelogic will continue to engage in this conduct because

it believes there is greater economic value in selling over-inclusive consumer reports and hiding information from consumers.

## COUNT I – FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### Class Claim

49. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

50. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class defined as follows:

> All natural persons residing in the United States (a) who were the subject of a report sold by Corelogic; (b) in the five years predating the filing of this Complaint and continuing through the date which the class list is prepared; (c) which included a sex offender record; (d) which did not match the applicant's date of birth.

> Plaintiff is a member of this class.

51. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a subclass defined as follows:

> All natural persons residing in the United States (a) who were the subject of a report sold by Corelogic; (b) in the five years predating the filing of this Complaint and continuing through the date which the class list is prepared; (c) which included a sex offender record; (d) which did not match the applicant's date of birth; and (e) Corelogic's records show the records were subsequently removed based on a dispute from the consumer.

> Plaintiff is a member of this class.

52. **Numerosity. Fed. R. Civ. P 23(a)(1).** Plaintiff estimates that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by Corelogic and the class members may be notified of the pendency of this action by published and/or mailed notice.

53. **Predominance of Common Questions of Law and Fact.** Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1.) whether Corelogic's failure to require date of birth matches for sex offender records was a procedure designed to ensure that its reports were as accurate as possible; (2.) whether Corelogic's conduct constituted a violation of the FCRA; (3.) whether Corelogic's conduct was willful; and (4.) what is the appropriate level of damages.

54. **Typicality.** Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members' claims.

55. **Adequacy of Representation**. Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the putative class because his interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with his counsel, to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor his counsel have any interest that might conflict with his vigorous pursuit of this action.

56. **Superiority.** Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove

burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Corelogic's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

57. As described above, Corelogic used loose matching criteria and algorithms that placed sex offender data on consumers' tenant screening reports, even though the dates of birth associated with the sex offenders did not match the applicant's date of birth.

58. This conduct violated § 1681e(b) of the FCRA because in using this loose matching criteria and algorithms, Corelogic failed to follow reasonable procedures to assure the maximum possible accuracy of the information it that it published about consumers to its landlord clients.

59. Plaintiffs and each putative class member suffered real and actual harm and injury.

60. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in Corelogic's files and reports.

61. Class members were also falsely painted as sex offenders to their prospective landlord.

62. Corelogic's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Equifax liable under 15 U.S.C. § 1681o.[1]

---

[1] Plaintiff seeks statutory and punitive damages on behalf of himself and others. If class

63. As a result of these FCRA violations, Equifax is liable for statutory damages from $100.00 to $1,000.00 for Plaintiff and each class member, punitive damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, on behalf of himself and the putative class members, moves for class certification and for statutory and punitive damages, as well as his attorney's fees and costs against the Defendant for the class claim, as well as actual, statutory, and punitive damages and attorney's fees and costs for his individual claim; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

By: */s/ Kristi C. Kelly*
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
*Counsel for Plaintiff*

---

certification is denied, Plaintiff intends to seek actual damages for Corelogic's violation.